## Case No. 17,383.

### WELLING v. RUBBER–COATED HARNESS TRIMMING CO. et al.

[2 Ban. & A. 1;[1] 7 O. G. 608.]

Circuit Court, D. New Jersey. Feb., 1875.

PATENTS COVERING PROCESS AND PRODUCT — RE-ISSUES—CONTEMPT—VIOLATION OF INJUNCTION.

1. Both a process and the product may be covered by one patent: but in such a case the description of the invention in the specification and claims should disclose that the inventor had both results in his mind.

2. If the specification and claims of a patent are not broad enough to give to the patentee the full benefit of his invention or discovery, the defect should be cured by a reissue of the patent.

3. Where an injunction had issued against the defendants for manufacturing an article claimed in the patent, and on a motion for an attachment, for a violation of the injunction, subsequently made, it being shown that the alleged violation consisted in the manufacture of an article, which to be an infringement of the patent would require a broader construction of the claim than had been given to it, the court, at the final hearing, without expressing any decided conviction on the subject, denied the application for the attachment, but directed the master to proceed with the accounting and to take a separate account of the articles alleged to have been manufactured in violation of the injunction. so that the question might be more fully presented on exceptions to the master's report.

[Cited in Smith v. Halkyard, 19 Fed. 602.]

In equity. [This was a motion for an attachment for an alleged violation of an injunction restraining the defendants from making, using, or vending any harness or carriage trimmings containing the invention of the plaintiff [William M. Welling], to wit. "a ring, manufactured as set forth substantially," with "a metal ring enveloped in composition. as and for the purposes specified." The injunction had been obtained upon proof that the defendants had made rings for harness by coating metal with hard rubber by the use of dies. It was now charged, upon the motion for an attachment, that the manufacture of terrets, buckles, and hooks, by a similar process. was an infringement of the patent, and therefore an infraction of the injunction.] [2]

Frederick H. Betts, for complainant.

J. C. Clayton and A. L. Keasbey, for defendants.

NIXON, District Judge. This is an application for an attachment against the defendants for violating an injunction issued by this court, June 12, 1874, restraining them from making. using, or vending to others to be used.

1 [Reported by Hubert A. Banning. Esq., and Henry Arden, Esq., and here reprinted by permission.]

2 [7 O. G. 608.]

any harness or carriage trimmings containing the invention of the plaintiff, and secured to him by letters patent, to wit: "a ring manufactured as set forth substantially," with a metal ring enveloped in composition, as and for the purposes specified. This injunction followed the decree of the court, sustaining the validity of the complainant's patent, No. 37.941 (March 17, 1863), for an "improvement in rings for martingales;" and the question now suggested is the scope of the said patent.

In the course of the accounting before the master, it was insisted by the defendants that the patent of complainant only referred to the use of certain compositions in the manufacture of rings for martingales, and hence the decree compelled them to account only for the manufacture of rings; whereas the complainant claimed that all the articles used in harness and carriage trimmings, which have been treated by the process described in his letters patent, such as terrets, buckles, and hooks, should be included by the master.

I have examined the bill, answer, proofs, arguments of counsel, and the opinion heretofore given in the case, and this examination has confirmed the strong impression in my mind, when this application was made, that the complainant is asking that a wider scope be allowed to the claims of his patent than has as yet been distinctly given to it by the court.

I do not mean to be understood as saying that it will not admit of such scope and meaning; but that the question had not yet been presented, and that this patent has not been considered in reference to such construction.

The principal question thus far presented was, whether the complainant. in the manufacture of rings for martingales. should be confined to a composition known as factitious ivory, or whether a ring coated with hard rubber, as prepared and used by the defendants. was an infringement of the complainant's patent? That such was the view of the court. is obvious from a few extracts from the opinion delivered after the final hearing. Welling v. Rubber-Coated Harness-Trimming Co. [Case No. 17.382]; and see 97 U. S. 7.

"It is insisted by the defendants." says the opinion, "that if the patent is valid at all, it must be limited to a 'martingale ring intended to imitate ivory. and made by covering a metallic ring with artificial ivory, such as is described in complainant's patent of 1857. or some similar compound.' " * * * "I think that this construction is too narrow, and does not give to the patentee all that he is entitled to, under the specifications and claims of his patent. It is quite clear. indeed, that factitious ivory was the composition uppermost in his thoughts. Having the partiality of a parent for his offspring. he naturally imagined that no superior compound could be formed or used." * * * "It is clear that the patentee had no thought of confining himself or others to the use of factitious ivory; for. after referring to his patent of 1857. he says: 'My present invention does not relate to any particular com-

position, as that (factitious ivory) or any similar compound may be employed. The nature of my invention consists in the employment of a metallic ring within a ring formed of artificial ivory or similar materials, for giving strength to the same,' etc." He then claims, " 'a ring for martingales, etc., manufactured as set forth, with a metal ring enveloped in composition' generally 'as and for the purposes aforesaid.' " * * * "I am of the opinion, on the whole case, that the claim of the complainant's patent, fairly construed, is not to be limited to the use of factitious ivory; that it is broad enough to include the composition of rubber or gutta percha, and that there should be a decree for the complainant."

All that the complainant is permitted to claim under the decision of the court as it stands is a specific article of manufacture to wit: A metal ring coated with any plastic composition capable of being compressed and solidified by the use and action of dies, whereby a ring is produced with an exterior surface more durable and more highly polished than has before been obtained by different processes of manufacture and at greater cost.

Such a construction obviously relates to the product. The complainant's patent is held to be good for the product resulting from a new combination of old instrumentalities. His claim on this application is understood to be for the process, and that the invention includes that as well as the product. Doubtless both may be covered by one patent, as was held by Judge Grier, in this court, in the case of Goodyear v. The Railroads [Case No. 5,563], but in such a case the description of the invention in the specification and claims should disclose that the inventor had both results in his mind. But the grave doubt here is, whether the specification and claim of the complainant's patent are broad and full enough to cover a new process as well as a new product.

It is a well-settled principle that a patentee may so limit his claim as to deprive himself of the full benefit of his invention or discovery. It was to remedy such a difficulty or omission that the privilege of surrender and reissue was granted in the patent laws. Patentees often fail to realize any substantial advantage from some of the most useful inventions, owing to their too narrow claims, until such surrender, amendment, and reissue have been made.

The complainant is entitled to be protected only in the rights which the letters patent cover and secure to him. I incline to the opinion that the specification and claim of the patent under consideration will be found too limited in their scope to admit of the construction now claimed for them by the able counsel for the complainant; but, without expressing any decided conviction on the subject, I shall, at this stage of the case, deny an application for an attachment and direct the master to proceed with the accounting. Under the reference already offered he may take an account: 1. Of the rings coated and finished by the de-

fendants, according to their method, as described in the proofs. 2. Of the terrets, buckles, and hooks as claimed by the complainant.

He will make up the two accounts separately, so that the aggregate of each may be readily distinguished; and, when his report is made, the parties will have the opportunity of obtaining the judgment of the court, and in this new and as yet unconsidered construction of the specification and claim of the patent, after their views are more fully presented, as they may be, on exception to the report.